No. 3-02-0305

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2003

COUNTRY COMPANIES, as subrogee of Michael D. Falatko

Plaintiff-Appellee,

v.

UNIVERSAL UNDERWRITERS INSURANCE COMPANY, d/b/a UNIVERSAL UNDERWRITERS GROUP,

Defendant-Counterdefendant-Appellant

and

MARK R. SECKLER,

Defendant-Counterplaintiff-Appellee

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court

of the 10th Judicial Circuit Peoria County, Illinois

No. 97-LM-1901

Honorable

Richard E. Grawey

Judge, Presiding

_________________________________________________________________

JUSTICE LYTTON delivered the opinion of the court:

_________________________________________________________________

Country Companies brought a subrogation action against Mark Seckler and Universal Underwriters Insurance Company ("Universal") based on an auto accident involving Seckler and one of its insureds, Michael Falatko.  Seckler filed a counterclaim against Universal seeking a declaration that Universal had a duty to defend and indemnify him.  The trial court ruled in favor of Seckler and against Universal, finding that Universal owed him coverage up to $500,000.  We affirm.

In July, 1996, Seckler and Falatko had a traffic accident, and Falatko was injured.  Falatko filed an action against Seckler, Ruff Electrical Services, Inc. ("Ruff"), and O'Brien Imports of Peoria, Inc. ("O'Brien"), alleging that Seckler negligently caused the accident, that Seckler was driving a vehicle in the course of his employment with Ruff at the time of the accident, and that the vehicle was owned by O'Brien.

Falatko was insured by Country Companies.  Seckler was personally insured by State Farm Mutual Automobile Insurance Company ("State Farm"), and O'Brien had a garage policy with Universal at the time of the accident.  Ruff was insured by CGU Insurance.

In October, 1997, Country Companies filed suit against Seckler and Universal, seeking subrogation for amounts paid to Falatko.  In June, 1998, Falatko and his wife also filed suit against Seckler individually.  In September of that year, Seckler filed a "Counterclaim for Declaratory Judgment" in the subrogation action seeking a declaration that Universal owed a duty to defend and indemnify him in both suits.  The two cases were subsequently consolidated.

Seckler moved for summary judgment in the declaratory judgment action.  Universal opposed the motion and sought leave to file a third party complaint adding State Farm to the counterclaim.  The trial court denied Universal's motion and granted summary judgment to Seckler.

After Universal asserted in a motion that Seckler was limited to $20,000 coverage under the policy, Seckler filed a motion to determine policy limits.  Universal objected, arguing that there was no basis in the pleadings to grant the motion and that not all necessary parties were joined.  The trial court granted the motion and held that Seckler was entitled to $500,000 coverage limits.

On appeal, Universal argues that the trial court erred when it made any finding of the limits of liability for two reasons: 1) Seckler did not join all of the parties that were necessary to the action; and, in any case, 2) Universal's limit of liability to Seckler was $100,000.

ANALYSIS

A.

Universal maintains that declaratory judgment on this issue was improper because parties that were necessary to a full resolution of the issue were not joined.  The company asserts that excess insurers are always necessary to a declaration of the limits of the primary insurer.  Therefore, since Seckler's excess insurer, State Farm, was not made a party, this court could not reach the issue.

In order to determine if a party is necessary to an action, two factors must be satisfied.  First, the party must have a legal or equitable interest in the subject matter of the suit.  
American Home Assurance Company v. Northwest Industries, Inc.
, 50 Ill. App. 3d 807, 812 (1977).  Second, that interest must be "a present or substantial interest as distinguished from a mere expectancy or future contingent interest."  
American Home
, 50 Ill. App. 3d at 812.

The first prong of the test is satisfied when an excess insurer bears potential liability if a primary insurer's limits are exceeded.  
American Home
, 50 Ill. App. 3d at 812.  However, the second prong of the test is not satisfied unless the primary insurer's liability limits have already been reached, regardless of the likelihood that those limits may later be exhausted.  
American Home
, 50 Ill. App. 3d at 812; 
Zurich Insurance Company v. Raymark Industries
, 144 Ill. App. 3d 943, 946-48 (1986).

Here, State Farm meets the first prong of the "necessary party" test, since it provided excess insurance coverage to Seckler.  However, at the time of the trial court's judgment, there was nothing in the record to indicate that Universal's primary liability limits were exhausted.  State Farm's interest was still merely contingent, and the company did not satisfy the second requirement to be a necessary party.  See 
American Home
, 50 Ill. App. 3d at 812.  Therefore, State Farm was not a necessary party to the action.

B.

Universal also argues that the trial court erred in its determination that Seckler was entitled to more than the minimum coverage required by law.  The company claims that its liability limits for this accident should be significantly lower.

Unambiguous terms in an insurance policy must be enforced as written, so long as they do not contravene public policy.  
John Deere Insurance Company v. Allstate Insurance Company
, 298 Ill. App. 3d 371, 376 (1998).  However, an insurance company can waive provisions of its policy by words or conduct that are inconsistent with an intention to rely on its requirements.  
National Tea Company v. Commerce & Industry Insurance Company
, 119 Ill. App. 3d 195, 205 (1983).

In this case, the policy provides coverage to the limits stated in the declarations page for most drivers, including O'Brien's owners, partners, employees, and contract drivers.  However, the policy contains an exception to the declared limits for certain classes of drivers that do not fall into one of the classes specifically named.  The policy decreases coverage for drivers who do not fit into one of the named categories but are "required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of [the vehicle owner's] permission."  This decrease in coverage for permissive drivers is known as a "step-down" provision.

Universal asserts that this step-down provision in the policy lowers its liability limits to Seckler.  The company argues that Seckler, as a permissive driver, falls within the exception to the general liability limits, and is entitled to no more than the minimum coverage required by law, i.e. $100,000.

Seckler responds that Universal filed a certificate of insurance with the Illinois Secretary of State stating that it was providing O'Brien with coverage limits of $300,000 per person for bodily injury, $300,000 per occurrence for bodily injury, and $300,000 per occurrence for property damage; those limits are higher than the limits the company claims should apply to this accident.  Seckler asserts that this filing should constitute a waiver of the step-down provision of the policy.  We agree.

When Universal certified to the Illinois Secretary of State that the same coverage applies to all occurrences, without exception, it waived any step-down provision in the policy.  Universal never indicated that coverage limits might be different for different types of drivers.  Filing the certificate with the Secretary of State, without reference to any differential limits, is an act inconsistent with an intention to rely on those provisions that changed the company's liability limits depending on the status of the driver.  See 
National Tea Company
, 119 Ill. App. 3d at 205.  Universal has waived its claim that the "step-down" provision controls, and the policy limits cannot be enforced.  See 
Browning v. Plumlee
, 316 Ill. App. 3d 738 (2000); 
John Deere Insurance Company v. Allstate Insurance Company
, 298 Ill. App. 3d 371 (1998).

However, Universal claims that this result conflicts with our previous decision in 
Country Mutual Insurance Company v. Universal Underwriters Insurance Company
, 316 Ill. App. 3d 161 (2000).  The company asserts that we faced this same issue in that case, but declined to hold that the injured party was entitled to coverage limits greater than the minimum required by law.  The company is incorrect.

In 
Country Mutual
, we had no need to reach this issue.  We needed merely to determine 1) whether Universal was the primary insurer for the injured party in that case, and 2) the proper 
minimum
 coverage requirements for a permissive user of a vehicle owned by a auto dealer.  In other words, we only determined the properly applicable minimum coverage, we were not asked or required to decide whether the injured party was entitled to coverage 
greater
 than the minimum.  See 
Country Mutual
, 316 Ill. App. 3d at 164-66.  Thus, our decision in this case is not inconsistent with the holding of 
Country Mutual
.

Nevertheless, Universal asserts that Seckler cannot rely on the certificate as a waiver because it was not presented as evidence before the trial court.  However, we may take judicial notice of public records regardless of whether such records were before the trial court.  
Muller v. Zollar
, 267 Ill. App. 3d 339, 341 (1994).  Moreover, we can sustain the trial court's judgment on any ground properly before us, no matter whether the trial court relied on it or whether the its reasoning was correct.  See 
Shramuk v. Snyder
, 278 Ill. App. 3d 745, 748 (1996).

In this case, we take judicial notice of the filing of the certificate, and it is properly before us.  As stated above, the certificate establishes that Universal waived its right to claim that its policy provided differing coverage based on the status of the vehicle's driver, at least to the extent that it attempts to decrease that coverage below the $300,000 limits it has represented to the State as coverage for drivers of any status.

Because the parties have informed this court that the action underlying this case has been settled for less than $300,000, we need not determine whether the result of Universal's waiver is coverage in the amount of the $300,000 noted in the certificate filed with the Secretary of State or the $500,000 contained in the declarations page of the policy.

The judgment of the circuit court of Peoria County is affirmed as modified.

Affirmed as modified.

HOLDRIDGE and SLATER, JJ., concur.